Mrs. Marion G. **ROWAN**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare.**

Civ. A. No. 76–3134.

United States District Court,
E. D. Pennsylvania.

May 2, 1977.

Anthony J. Miernicki, Shenandoah, Pa., for plaintiff.

David W. Marston, U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This case arises under Part B, Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended. 30 U.S.C. § 901 *et seq.* The act establishes a program for the payment of benefits to living miners who are totally disabled due to pneumoconiosis arising out of coal mine employment and to the dependents of miners who died due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of their death.

Plaintiff's decedent died in 1957 as the result of pneumoconiosis after having been employed in the nation's coal mines for at least thirty years. The plaintiff and the decedent were married over twenty-eight years but were divorced on or about May 10, 1954. At the time of the divorce, it was agreed that the decedent would contribute to the plaintiff and her son the sum of $100.00 per month, plus $60.00 in food and groceries. The record establishes, without contradiction, that including the month of his death the decedent had complied with the agreement. The question involved is whether plaintiff has proven dependency in accordance with the statutory provisions and the applicable regulations. There are three methods provided for proving dependency. The first method requires a showing that, for the month in which the miner died, the divorced wife was receiving at least one-half of her support from the miner. 20 CFR 410.361(a). "One-half support" is defined as regular contributions in cash or kind equal to or exceeding one-half the total cost of the divorced wife's support for the one-month period. 20 CFR 410.395(g) defines the term "one-half support":

"The term 'one-half support' means that the miner made regular contributions, in cash or in kind, to the support of a divorced wife (sec. 410.351(a)), or of a surviving divorced wife (410.361(a)), at the specified time or for the specified period, and that the amount of such contributions equaled or exceeded one-half the total cost of such individual's support at such time or during such period."

Section 410.395(a) defines the term "support":

"The term 'support' includes food, shelter, clothing, ordinary medical expenses, and other ordinary and customary items for the maintenance of the person supported."

The Administrative Law Judge (ALJ), in reaching his conclusions, repeatedly alluded to the fact that the plaintiff had attempted to "change" her testimony as regards the contributions received from the decedent in that she stated that the $100.00 per month contribution was for the minor son and then later attempted to change this testimony. Perhaps a quite technical reading of the record supports this conclusion. However, a reading of the record as a whole supports a contrary conclusion. Notwithstanding the fact that the plaintiff was represented by counsel, the ALJ conducted his own examination. Approaching first an itemization of the plaintiff's monthly expenses (R. 23) and then departing quickly to other matters (R. 24 *et seq.*), he returned to monthly expenses (R. 27 *et seq.*) and then asked a series of somewhat leading questions to determine whether the $100.00 payment received in cash from the decedent each month was for the support of the son or for the support of the plaintiff, or for their combined support (R. 30). The record reads as follows:

"Q. Now, that $50 was not—I want to—Now, what about the hundred for your son's support? Was that the $50 that he gave you every 2 weeks?

A. Yes.

Q. Now, I'm talking about yourself. Did he give you anything for you? Aside from this hundred—

A. No. That's what I got, the hundred dollars.

Q. The hundred dollars was for your child's support?

A. Uh-huh.

Q. And plus $60 a month for food.

A. Yeah.

Q. Okay. Well, that was for both you and your son.

A. (No response.)

MR. MIERNICKI: Do you understand what he's asking?"

(R. 30)

The examination by the ALJ resulted in complete confusion on the part of the plaintiff:

"BY ADM. LAW JUDGE:

Q. See, what I want to determine is what your requirements were, not what your son's were. That's something else.

Now, you said here, these statements from Louise Fox, Herman Fox, they said he agreed to pay a regular support payment. Now, it's your testimony that the money was actually for Robert's support.

A. Well—

Q. I mean—I just—That's what I'm here to find out.

A. Well, I'll change that. Can I change it?

Q. Well, you tell me. I've been asking you and I—I don't want it changed,—

A. I'm so—

Q. —I mean, but I want it just told to me the way it is. That's all I want. Tell me what you were going to say. It's all right.

MR. MIERNICKI: I think she got confused by the $200.

ADM. LAW JUDGE: Want to take it this point, Mr. Miernicki?

MR. MIERNICKI: Yeah."

(R. 30, 31)

As counsel for the plaintiff then proceeded, at the invitation of the ALJ, to examine the plaintiff, the ALJ suddenly interrupted as follows:

"ADM. LAW JUDGE: For what? That's what I want to find out?

CLAIMANT: For me.

ADM. LAW JUDGE: Well, what about your child?

CLAIMANT: Or, for—child—Robert."

(R. 32)

and the testimony then continued as follows:

"BY MR. MIERNICKI:

Q. Was the hundred supposed to be strictly for Robert or—

A. Yeah.

Q. —for both for Robert and you? Do you understand what I'm saying?

A. Uh-huh.

Q. Was it supposed to be just for Robert, or both for Robert and—

A. The both.

Q. For both of you?

A. Yes.

Q. Okay. And did he also agree to provide food for both of you?

A. Yes.

Q. And how much did he provide, or did he agree to provide?

A. We had that agreement.

Q. What agreement?

A. For $100.

Q. And did he provide food also?

A. Yes. $30.

Q. Was that according to your agreement?

A. Yes."

(R. 33)

Two children were living at home, Marion and Robert:

"Q. Okay. Now, how many children were living at home with you at this time?

A. Marion and Robert."

(R. 34)

and decedent's contributions were used for the benefit of all:

"Q. All right. And was the $100 that was given to you each month, was that used to pay the expenses of all 3 of you?

A. Yes.

Q. Was it used to pay your expenses as well?

A. Yes."

(R. 34)

The plaintiff appears to be somewhat of a "poor soul", quite sensitive to her age and inability to cope with the questions asked her by counsel and the ALJ:

"A. I went to the hospital in '56. No. '57. And they were gone then. Isn't this awful when you get old?"

(R. 46)

A reading of the record as a whole does not indicate that the plaintiff, in reality and in truth, sought to change her testimony, but rather that she was confused by questions, some leading, designed to establish that none of the $100.00 received monthly from the decedent was used by her. The record as a whole clearly establishes that she received both money and food from the decedent each month and that it was in fact used for the benefit of all three members of the family, including the minor son and including the plaintiff.

Thus, the real question rests upon whether the plaintiff received one-half of her support from the decedent. The record establishes that her income consisted of the $100.00 received from the decedent each month, plus $60.00 in food and groceries, plus her own earnings which varied from $72.00 per month to a gross of $160.00 per month, without deductions for income tax, social security, local taxes, etc.

Her expenses consisted of the following per month:

| | | |
|---|---|---|
| Mortgage payments | | $ 25.00 |
| Interest payments | | 10.00 |
| Food | At least | 60.00 |
| Coal | | 16.00 |
| Taxes | | 6.00 |
| Commuting fees | | 3.00 |
| Electric bills | | 13.00 |
| Or a total of | | $133.00 |

The record is silent as to additional expenses which must necessarily have been assumed by the plaintiff, such as necessary major repairs to the home, including painting, roof repairs, window repairs, curbing, etc., including medical bills, service calls to maintain utilities, service calls for refrigerator maintenance and repairs, furnace repairs, and recreation. Nothing is considered for cost of telephone, income taxes, sales taxes, etc. It is apparent that with fixed expenses of $133.00 and with other obvious and necessary expenses which the plaintiff must have assumed, it is grossly unfair and inequitable to rely upon an apparent conflict in her testimony and to use such conflict, resulting from cross-questions by counsel and the ALJ, as the basis for the denial of benefits. Rather, reason and common sense should be applied to the obviously honest testimony of this aged plaintiff and applying such principles, it is obvious on this record that all contributions received from the decedent were used by the plaintiff for herself and for her children, nor was the $100.00 nicely set aside and used for the benefit of the minor son only, and the record does not support such conclusion.

We recognize that we are bound by the substantial evidence rule, that this requires more than a scintilla, and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion": *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Examining the facts contained in the administrative record and evaluating the conflicts, we are compelled to conclude, based upon the record as a whole, that the findings and conclusions of the ALJ are not supported by substantial evidence. Rather, considering the record as a whole, there is substantial evidence to support the conclusion that the plaintiff did in fact receive one-half of her support from the decedent at the time of his death.

While a remand of the record might indeed give both parties the opportunity to produce additional evidence as to the plaintiff's expenses, it must be remembered that we are here dealing with a situation that occurred twenty years ago. A remand of the record must necessarily result in the production of evidence as to living expenses

not considered in this record. However, the present record is, we believe, sufficient to support plaintiff's motion for summary judgment without remand and, accordingly, plaintiff's motion for summary judgment will be granted, defendant's motion for summary judgment will be denied with leave, however, to either party to seek remand if desired.